Rockingham
No. 98-150

BARBARA SIMPSON

v.

WAL-MART STORES, INC. d/b/a SAM'S CLUB

December 30, 1999

*Denise A. Gallagher*, of Kingston, by brief and orally, for the plaintiff.

*Craig L. Staples*, of Concord, by brief and orally, for the defendant.

BROCK, C.J. The defendant, Wal-Mart Stores, Inc. (Wal-Mart), appeals a jury verdict for the plaintiff, Barbara Simpson, in a slip and fall action. The defendant contends that the Superior Court (*Murphy*, J.) erred in denying its motions for directed verdict and judgment notwithstanding the verdict, failing to give certain jury instructions, admitting improper evidence, and refusing to admit a letter into evidence. We affirm.

The following facts were adduced at trial. On January 26, 1994, the plaintiff drove to Sam's Club warehouse store, which is owned and operated by the defendant, in Seabrook. Arriving at approximately 8:20 p.m., the plaintiff parked her car, crossed the parking lot, and entered Sam's Club without incident. The plaintiff picked up a cake she had ordered. As she exited Sam's Club, the plaintiff slipped and fell on ice on the store's exitway, hitting the ground on her left side and arm.

The plaintiff did not inspect the exitway on which she fell. She walked to her car and drove ten minutes to friend Cheryl Belanger's house, where, according to her friend, the plaintiff appeared anxious and nervous. At this point, the plaintiff did not complain of any physical injuries resulting from the fall. A few days later, however, she began to experience abdominal pain. She was admitted to a hospital and diagnosed with internal bleeding resulting from a ruptured spleen.

After a jury trial in January 1998, the jury returned a verdict for the plaintiff and awarded her damages. The defendant's motion for directed verdict during trial and post-verdict motion for judgment notwithstanding the verdict were denied. In denying the motion for

directed verdict, the trial court ruled that the plaintiff had presented sufficient evidence for the jury to find the defendant negligent. In denying the motion for a judgment notwithstanding the verdict, the trial court ruled that its instructions to the jury correctly stated the law.

On appeal, the defendant first contends that the trial court erred in denying its motions for directed verdict and judgment notwithstanding the verdict. "Though they are made at different points in a trial, motions for directed verdict and judgment notwithstanding the verdict are essentially the same, and they are governed by identical standards." *Bronson v. The Hitchcock Clinic*, 140 N.H. 798, 800, 677 A.2d 665, 667 (1996) (quotation, brackets, and ellipses omitted). "We will uphold a denial of these motions where sufficient evidence in the record supports the trial court's ruling." *Simonds v. City of Manchester*, 141 N.H. 742, 744, 693 A.2d 69, 71 (1997). We will reverse the trial court "only when the sole reasonable inference that may be drawn from the evidence, which must be viewed in the light most favorable to the nonmoving party, is so overwhelmingly in favor of the moving party that no contrary verdict could stand." *Id.*

The defendant argues that its motions should have been granted because the plaintiff failed to present evidence regarding the defendant's notice of the slippery condition or the length of time it existed prior to the plaintiff's slip and fall.

The instant case is analogous to *Tremblay v. Donnelly*, 103 N.H. 498, 175 A.2d 391 (1961). In that slip and fall action, a woman was injured when she slipped on a pear on the defendant's unlighted porch. *Id.* at 499, 175 A.2d at 393. We affirmed the plaintiff's verdict in part because evidence was presented that the defendant knew or should have known that pears fell on the porch, creating a hazard, and that the defendant did not take reasonable preventative action. *Id.* at 500, 175 A.2d at 393.

We hold that the record before us in this case contains sufficient evidence for a jury to determine that the defendant was aware or should have been aware of icy conditions during the winter, knew they created a hazard to its customers, and yet took no preventative action. Evidence showed that precipitation fell in Rockingham County on January 26, 1994, and that a plowing company spent four and a half to five hours clearing snow and spreading nine tons of salt on the Sam's Club parking lot. The plaintiff testified that she saw snow and ice up against the building close to where she fell, and that as she exited Sam's Club, she slipped on ice and fell on the exitway.

Moreover, the head of maintenance at Sam's Club testified that, during the winter months, ice and snow on the store's exitway

would pose a danger to customers. He stated that assigning a person, or several, to check on the exitway and salt it as needed would be a reasonable approach to address any icing dangers. The defendant took no action that day to address icing on the exitway. Therefore, we are satisfied that "[s]ince there was evidence . . . from which the jury could find that the defendant knew or should have known . . . [of potential icing] and could have taken preventive action, it could likewise find that reasonable care required that [the defendant] should have taken such action." *Id.*

The defendant next contends that the trial court erred in giving a jury instruction that did not state that the slippery condition must have existed for such a length of time that, in the exercise of ordinary care, the defendant should have known of it and taken action to remedy it. "We review jury instructions in context and will not reverse unless the charge, taken in its entirety, fails to adequately explain the law applicable to the case so that the jury could have been misled." *Chellman v. Saab-Scania AB*, 138 N.H. 73, 79, 637 A.2d 148, 151 (1993).

■ Under New Hampshire law, "owners and occupiers of land shall be governed by the test of reasonable care under all the circumstances in the maintenance and operation of their property." *Ouellette v. Blanchard*, 116 N.H. 552, 557, 364 A.2d 631, 634 (1976). The trial court instructed the jury, in relevant part:

> The defendant has the duty to use ordinary care, to remove ice or snow which makes its premises likely to be hazardous within a reasonable time after it knew or should in the exercise of due care should [*sic*] have known that [the] condition existed.

As stated above, the evidence was sufficient to support a finding that the defendant knew or should have known about the hazard that an icy exitway would pose to its customers and that it did not use ordinary care under the circumstances. An instruction regarding the length of time that the slippery condition existed would not have aided the jury. After reviewing the entirety of the trial court's instruction, we conclude that it did not mislead the jury.

■ The defendant next contends that the trial court erred by admitting as an excited utterance the plaintiff's hearsay statement to Cheryl Belanger that she had fallen at Sam's Club. The plaintiff made this statement when she arrived at Belanger's home approximately ten minutes after the slip and fall. An excited utterance is "[a] statement relating to a startling event or condition made while

the declarant was under the stress of excitement caused by the event or condition." N.H. R. Ev. 803(2). For hearsay to be admitted as an excited utterance, "it must appear to the satisfaction of the presiding justice that the utterance was a spontaneous verbal reaction to some startling or shocking event, made at a time when the speaker was still in a state of nervous excitement produced by that event and before he had time to contrive or misrepresent." *State v. Hudson*, 121 N.H. 6, 11, 425 A.2d 255, 257 (1981) (quotation omitted); *see also State v. Kenna*, 117 N.H. 305, 307, 374 A.2d 427, 429 (1977). "We will not reverse a trial court's ruling on the admissibility of evidence absent an abuse of discretion." *State v. Young*, 144 N.H. 477, 482, 743 A.2d 1275, 1280 (1999). "To show an abuse of discretion, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case." *Id.* at 482, 743 A.2d at 1280 (quotation omitted).

We hold that the trial court did not err in admitting the plaintiff's statement as an excited utterance. The plaintiff testified that she "went flying" and fell on her left arm and side. Cheryl Belanger testified that when the plaintiff arrived at her home, she appeared a little anxious, a little nervous, and was covered with cake frosting. Belanger also testified that something was wrong with the plaintiff when she arrived.

The defendant argues that the plaintiff was no longer under the excitement of the slip and fall when she made the statement because she had collected herself, walked to her car, and driven to Belanger's home. "While it is true that contemporaneity is a factor to be considered in determining the admissibility of such statements, it is by no means controlling, and such things as the nature of the event, the victim's state of mind, and all other circumstances are important considerations." *State v. Martineau*, 114 N.H. 552, 556, 324 A.2d 718, 721 (1974). Based on the evidence, the trial court did not abuse its discretion in determining that the plaintiff's statement was made in response to and under the excitement of the slip and fall.

Finally, the defendant argues that the trial court erred in refusing to admit a letter into evidence. At trial, defendant's counsel sought admission of a letter dated December 10, 1996, from Marc D. Sopher, M.D., to plaintiff's counsel, and requested that he be allowed to cross-examine the plaintiff's medical expert, Dennis B. Hammond, M.D., on its contents. The letter contained an out-of-court statement by Dr. Sopher that it was not clear to him that the plaintiff sustained her injury as a result of her slip and fall at the

defendant's store. The defendant obviously wanted to use the letter to prove the truth of the matter asserted; *i.e.*, that it is difficult to establish that the slip and fall at the defendant's store caused the plaintiff's injuries.

The trial court denied the defendant's request because the letter was hearsay and unreliable, and because the author was not subject to cross-examination. *See* N.H. R. EV. 801(c). Again, we will not overturn the trial court's ruling regarding the admissibility of evidence unless the trial court abused its discretion. *See Young*, 144 N.H. at 482, 743 A.2d at 1281.

The defendant argues that the letter was admissible as a vicarious admission of the plaintiff. A statement is not hearsay if "[t]he statement is offered against a party and is . . . a statement by a person authorized by the party to make a statement concerning the subject." N.H. R. EV. 801(d)(2)(C).

 In support of his argument, the defendant cites a Fifth Circuit case, *Collins v. Wayne Corp.*, 621 F.2d 777 (5th Cir. 1980). We are not persuaded by its rationale because the present case is clearly distinguishable. In *Collins*, the Fifth Circuit held, in part, that a report compiled by an expert hired by a party is admissible as a vicarious admission of that party. Here, Dr. Sopher was not hired by the plaintiff to provide a report on the causation of her injury. He was the plaintiff's attending physician when she entered the hospital after her slip and fall.

The defendant further argues that Dr. Sopher's letter was partly the basis for Dr. Hammond's opinion testimony and thus admissible under New Hampshire Rule of Evidence 703. As such, the defendant contends that the trial court should have allowed it to be used to impeach Dr. Hammond.

New Hampshire Rule of Evidence 703 states that "[t]he facts or data . . . upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing." Rule 703 further states that "[i]f of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

 Dr. Hammond testified that he consulted with the plaintiff in 1994 and reviewed her medical history, performed a physical examination of the plaintiff, and reviewed her laboratory data and X rays. After that consultation and review, Dr. Hammond concluded that trauma was probably the most likely explanation for the plaintiff's hemorrhaging. Dr. Sopher's letter, however, was dated

December 10, 1996, two years after Dr. Hammond formed his opinion regarding the plaintiff's injury, and the record is devoid of evidence showing that the letter from Dr. Sopher to plaintiff's counsel is the type of record reasonably relied upon by medical experts in forming opinions. Further, the trial court found that the letter was unreliable as Dr. Sopher was not available for cross-examination. Thus, the trial court did not abuse its discretion by denying the use of the letter to impeach Dr. Hammond. *Cf. Brown v. Bonnin*, 132 N.H. 488, 494, 566 A.2d 1149, 1153 (1989).

*Affirmed.*

All concurred.